Scott, J.
This suit was brought under the former system of practice, by the owners of the steamboat “ Gem,” upon a policy of insurance issued by the defendant, to recover the amount of a general and also of a special average claim.
To the plaintiff’s declaration, the defendant pleaded the general issue, with notice of a set-off'.
The general average claim, and the defendant’s set-off' are severally admitted, and the amount of each is agreed upon. There is no dispute as to the items of the particular average claim, or that they are properly chargeable as such. The only question in the case depends upon the construction of the following clause in the policy: “ Provided, that the insurers shall not be liable for the expense of dockage, or hauling out for repairs, nor for any loss (except in case of general average), unless the necessary repairs, caused solely by the disaster, shall amount to ten per cent, on the agreed value in this policy.”
Among the items which constitute the particular average claim of the plaintiffs, are these two, paid by them to the Louisiana Dry Dock Company, at New Orleans, where the boat was repaired:
“For docking boat, 478 tons measurement, - $246 00 For use of dock five days, $46 per day, - - 230 00
$476 00”
*460 The “ agreed value ” stated in the policy is $20,000; and the cost of the repairs made necessary solely by the disaster, exclusive of the two items above stated, was $1,955.69. So that, if both or either of these items are properly chargeable as a part of “the necessary repairs,” within the meaning of the foregoing clause of the policy, the loss amounts to ten per cent, on the agreed value, and the defendant is not exempted from liability therefor; but if neither of said items is so chargeable, then the loss does not amount to ten per cent., and the defendant is not liable. It is not claimed in argument that the defendant is never liable for the expense of dockage, but that no such liability can attach, under this clause of the policy, until there is, exclusive of dockage, a ten per cent. loss.
This question is presented on an agreed statement of facts, embodied in the bill of exceptions, from which it further appears, that the amount charged for the use of the dock was a fair charge as to amount, and had been paid by plaintiffs, and that injuries, such as were occasioned by the disaster in this case, are invariably repaired by the use of a dry. dock.
As a question of fact, irrespective of any special understanding of the parties, supposed to be indicated by the phraseology of the clause which we have quoted, the agreed statement of facts would seem to leave no room for doubt, that the item paid by the plaintiffs, and now claimed by them for the use of the dock whilst the repairs were being made, is justly to be regarded as a part of the cost or expense of repairs, and is therefore to be taken into the account, whenever the question arises whether the cost of such repairs amounts to a particular sum. Eor, it is admitted, that such repairs as were rendered necessary by the disaster, in this case, are invariably made by the use of a dry dock. This must, therefore, be regarded as the proper mode of making such repairs; the one most conducive to the interests of all the parties. In making repairs in this proper mode, the use of the dock cannot be said to *461 be a mere preparation for repairs. It is, in fact, a source of expense, constantly accruing and accumulating during the whole time that the repairs áre being made; it is inseparable from the making of the repairs, and enters as truly into their cost, as does the use of the tools with which they are made. It is simply a mode of making repairs, or an instrumentality by means of which they are made, and this mode or instrumentality is conceded to be the one which the case demanded, and the amount paid for it is admitted to be fair and reasonable.
But, conceding all this, and that the defendant would properly be chargeable, by the general terms of the policy, with these two items as a part of the cost of repairs, it is claimed that the clause of exemption, here relied on, clearly expresses a different understanding between the parties, and indicates their intention to exclude those items from the computation of the amount expended for “ necessary repairs
Let us then examine whether this be so, for upon this point the decision of the case must turn.
The clause in question is of recent introduction into policies of insurance, and neither judicial decision nor uniform usage, has, so far as we are aware, established its construction. The intention of the parties, if that can be satisfactorily ascertained, should doubtless govern in giving a construction to the clause; and it is proper that that intention should be sought for by the light of the rules which wisdom and experience have established as conducive to that end, and with special reference to the general principles of the law of insurance.
One of these leading rules is, that “ as a contract of indemnity to the assured, the policy is to be liberally construed in his favor, not only because this mode of construction is most conducive to the interests of commerce, but because it is probably most consonant to the intentions of the parties. It is certain that the assured desires as ample an indemnity as he can obtain, and it is probable that the *462 insurer means that he shall understand the indemnity given, to be as extensive as its terms, upon any fair interpretation, import.” 1 Duer on Ins. 161.
Another rule is thus stated by the same author: “ Eor the same reasons, and not in obedience to a mere technical rule, an exception from the risks of the policy is to be construed strictly against the insurer. Such an exception is a modification of the promise of indemnity, and as that promise is to be liberally construed, it is a necessary consequence that the exception cannot be permitted to abridge its operation to a greater extent than the terms used plainly require.” This rule is entirely applicable to the clause in question, which was manifestly intended to limit and qualify the general liability which, by the terms of the policy, the insurer assumed in regard to all “perils of the river, fire,” etc.
A third rule is, that “the words of the policy are to be understood in their general, ordinary, and popular sense, unless in cases where it is manifest from the context that they were used by the parties in a distinct and peculiar sense, which is necessary to be adopted to give effect to their immediate intent.” Ib. 162.
Again, it is laid down by the same authority, as a sound maxim, that “effect must be given, if possible, to every clause, and no words rejected as unmeaning or superfluous, to which a consistent meaning may be attached; and this rule is especially applicable where a new clause is introduced into a contract which, as in the case of a policy of insurance, has an established form and settled construction.” Neilson v. The Com. Mut. Ins. Co., 3 Duer 461.
These last two rules are supposed to have a bearing on this case, and would seem to be the ground on which the question was decided in favor of the defendant by the court below. (2 Hand. Rep. 252.) But with all the respect for that court, which its well known character demands, we must say that we do not perceive the conclusive bearing and force of these rules upon the question.
*463 The insurers say, in the policy, that they “will not he liable for the expense of dockage, or hauling out for repairs, nor for any loss, unless,” etc.; and it is said that the words “ expense of dockage or hauling out for repairs,” must not be rejected as superfluous, and that effect must he given to them, if possible.
But these words, “ any loss,” certainly include any and all expenses necessarily arising from casualties insured against, and must therefore include dockage and hauling out for repairs. This phraseology is but an instance of what often occurs in formally worded contracts, where, after specifying several prominent particulars, a general term is employed, comprehending the particulars already named, with many or all others of the same class. But no ingenuity of construction can give to particulars a more comprehensive meaning than to the general term within which they are clearly embraced.
If, then, we strike out these particular specifications, “expense of dockage and hauling out for repairs,” as necessarily included in the general terms, “ any loss,” which follow, and read the whole clause thus: “The insurers shall not be liable for any loss (except in cases of general average) unless the necessary repairs caused solely by the disaster, shall amount to ten per cent.,” etc., would any one doubt but that in a case requiring the use of a dry dock for repairs, the item of dockage would properly constitute a part of such ten per cent.?
But it is said that from the special mention of “ dock-age” and “hauling out for repairs,” it may be fairly inferred that these items were intended to be distinguished from “repairs,” and must have been regarded rather as preparations for repairs. This suggestion would be forcible, and a proper case would be presented for the application of the third rule, heretofore cited, if the term “ repairs ” were used in the same connection with the words “ dock-age,” and “ hauling out for repairs.” If, for instance, the clause read thus: “The insurers shall not be liable for the *464 expense of dockage or hauling out for repairs, nor for repairs, unless,” etc. But such is not the language of the clause, nor does it, in our view, purport to define, directly or indirectly, what is, or what is not, a part of “ the necessary repairs,” except by limiting them to such as are “ caused solely by the disaster.”
The special design of the insertion of this new clause of exemption is not very apparent. It is very important to the insurer, that it should be to the interest of the party insured to exercise care, prudence and watchfulness in guarding against the perils for which the insurance is effected. And for this reason, insurances are never taken to the full value of the property insured. This clause may have been inserted with a view to the fuller attainment of the same end. But it is at least as probable that it was intended to secure the insurer from claims for indemnity against losses resulting not from the perils insured against, but from ordinary wear and tear. The placing of the vessel on the dry dock would tend to prevent imposition and fraud by disclosing the character and cause of the injuries requiring repairs, and it is not probable that the insurers intended to discourage this mode of repairing, when the character of the injury would render it proper. Be this as it may, we think it apparent that there is nothing, in either the language or the context of the clause, which is clearly expressive of any other or further intention than to exempt the insurers from all liability for losses in cases of particular average, unless the repairs which would be rendered necessary solely by the disaster, should amount to ten per cent, on the agreed value in the policy.
"What are “ necessary repairs, caused solely by the disaster,” is a question which this clause leaves to be settled by extrinsic proofs. And so, we think, it would be ordinarily understood.
But, if there be room for doubt, whether more may not have been intended, the first two rules, before referred to, would require that doubt to be x-esolved in favor of the *465 plaintiffs. It is at best a case in winch, the maxim “ verba fortius accipiuntur contra proferentem,” is of propel’ application. It is but reasonable to require that, in order to entitle a party to the benefit of an alleged exception or exemption in Ms favor, it must be so clearly stipulated for in the contract, as not to prove a trap for the unwary.
The judgment of the superior court of Cincinnati will be reversed, and judgment entered here in favor of the plaintiffs, for the sum agreed to be due under this construction of the policy.
Brinkerhoee, Sutliee and Peck, JJ., concurred.
. Swan, C. J., dissented.